# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| ROSALIE MARCANTEL | * | CIVIL ACTION NO. 07-1964 |
|---|---|---|
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Rosalie Marcantel, born February 5, 1952, filed an application for supplemental security income on June 23, 2005, alleging a disability onset date of September 1, 2003, due to anxiety disorder, depression, high blood pressure, arthritis, obesity, and thyroid problems. The claim was denied initially and on reconsideration. Claimant filed a request for hearing, which was held on January 24, 2007.

After the hearing, the ALJ issued a decision on February 21, 2007, finding that claimant was not disabled prior to January 24, 2007, but became disabled on that date and has continued to be disabled through the date of that Decision. Claimant appealed that Decision with this Court on the issue of when the onset date occurred.

# FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled. However, I recommend that this matter be remanded for further administrative action, based on the following:

**(1) Consultative Examination by Dr. Samuel J. Stagg, Jr. dated November 1, 2005**. Claimant complained of knee pain and hypertension for 10 years, and acid reflux. (Tr. 92). She had had a hyperparathyroidism in August, 2005. (Tr. 94-98). Her medications included Fosamax, Levothyroxine, Fosinopril, Zantac, HCTZ, and Ibuprofen. (Tr. 92).

On examination, claimant was 5 feet 1 inch tall, and weighed 193 pounds. Her blood pressure was 130/100. Her vision without glasses was 20/70 in the right eye and 20/100 in the left.

Claimant's lungs were clear. Her heart had a bradycardia, but no cardiac murmurs, rubs, thrills, or enlargement. Heart tones were good.

Claimant's abdomen was slightly obese. She had no edema of the extremities. Pulses were bilateral, equal, and normal.

Reflexes were bilateral, equal, and physiologic. (Tr. 93). Claimant had no apparent muscle weakness or atrophy. Grip, dexterity, and grasping appeared normal.

Claimant had normal range of motion of the upper extremities. Straight leg raising was normal. She had normal knee range of motion with no effusion. She had no clubbing or cyanosis of the digits. Vibratory and fine touch sensation was normal.

Claimant walked on her toes and heels without difficulty. She had normal range of motion of the lumbar spine.

Dr. Stagg's impression was hyperparathyroidism, hypothyroidism, severe hypertensive cardiovascular disease, etiology undermined, osteoporosis, osteopenia, and gastroesophageal reflux disease.

**(2) Consultative Eye Examination Report by Dr. Kenneth C. Lafleur dated December 22, 2005**. Claimant's vision with correction was 20/25 in both eyes. (Tr. 102). Her diagnoses were myopia and presbyopia. The prognosis was good.

**(3) Consultative Psychological Report by David E. Greenway, Ph.D., dated January 26, 2006**. Claimant stated that she did not get along with or communicate well with other people. (Tr. 106). She was unemployed, and not

3

looking for work. She reported that she and her husband shopped together, and that she cooked family meals and cleaned her house. She stated that she attended church weekly, attended AA meetings with her husband, went to the library occasionally, watched tv, read, and did sewing and needlework.

Claimant reported that she got depressed "a little bit." She did not get close to people. She had no indication of psychotic symptoms.

Claimant's verbal behavior was of normal rate and soft volume. Her speech was relatively capable of adequately conveying ideas, and she had no loosening of associations. She had no evidence of a formal thought disorder.

Claimant's vocabulary and range of expressive symbols were good. Her average vocalization was of adequate complexity. Overall, she had no difficulty in enunciation or production of speech. (Tr. 207).

Claimant's receptive skills were good. (Tr. 107). She appeared to understand Dr. Greenway adequately, and was capable of responding appropriately.

Claimant's affective expression was slightly anxious and blunted. Her insight appeared fair, with spotty judgment. Her social skills were adequate.

During interviewing, claimant was alert and oriented. Her level of consciousness was stable. Attention was adequate. Concentration was poor.

Recent and remote memories were intact.

Behavioral pace was fair with good effort. Persistence was adequate. Overall, claimant's intelligence was estimated in the borderline range of intellectual functioning.

Dr. Greenway's diagnoses were anxiety, NOS, mild to moderate – prominent social/public anxiety; borderline intellectual functioning, and psychosocial problems. Her Global Assessment of Functioning score was 60 over the past year. She had no restriction of ADLs related to mental health problems.

Dr. Greenway concluded that claimant exhibited some mild activity. However, her affect was overall blunted. He opined that barring medical limitations, claimant should be able to maintain at least part-time employment.

Claimant's cognitive skills were adequate to understand, remember, and carry out simple instructions, and to maintain attention to perform simple repetitive tasks for two-hour blocks of time. Dr. Greenway stated that she should be able to tolerate at least mild stress associated with day-to-day work activity and demands. He noted that she should be able to sustain a moderate effort and persist at a slow pace over the course of part of each workday. Her social skills were adequate for simple work-related matters. She would be considered a minimally capable manager of her own personal financial affairs.

**(4) Mental Residual Functional Capacity Assessment dated February 1, 2006**. Jeanne L. George, Ph.D., determined that claimant was moderately limited as to her ability to understand, remember, and carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with or proximity to others; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (Tr. 110-11). She was markedly limited as to her ability to interact appropriately with the general public. (Tr. 111). Dr. George concluded that claimant could persist for a 40-hour week from a mental standpoint, "but could not maintain a consistently high level of concentration or pace." (Tr. 112).

**(5) Psychiatric Review Technique dated February 1, 2006**. Dr. George assessed claimant for borderline intellectual functioning and anxiety-related disorders. (Tr. 114-15, 119). She determined that claimant had moderate restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Tr. 124). She had no episodes of decompensation. Dr. George found that

claimant's conditions would cause work-related impairments, but would not preclude some types of work. (Tr. 126).

**(6) Physical Residual Functional Capacity Assessment dated February 10, 2006**. The consultative examiner determined that claimant could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 129). She could stand/walk about six hours in an eight-hour workday, and sit less than six hours in an eight-hour workday. She had unlimited push/pull ability. She was to avoid all exposure to hazards, such as machinery and heights due to uncontrolled hypertension which could cause dizziness. (Tr. 132).

**(7) Records from VA Medical Center-Alexandria dated November 21, 2002 to November 27, 2006**. On October 1, 2003, claimant's blood pressure was 151/94. Her diagnosis was diagnosed hypertension, not well controlled. (Tr. 304). She was started on HCTZ 12.5 mg for poor blood pressure control.

On January 5, 2004, claimant admitted that she had been taking only half of her medication. (Tr. 301). Her hypertension appeared better controlled. (Tr. 269, 301). She was instructed to continue diet and exercise for hypercholesterol.

On October 16, 2003, claimant presented for evaluation of scars from a laceration. (Tr. 252). She had injured her right shoulder during boot camp in 1969/1970. X-rays suggested mild anterior and inferior subluxation.

On April 23, 2004, claimant complained of intermittent throbbing pain to the inner aspect of her left knee and foot. (Tr. 299). Her hypertension was well-controlled. (Tr. 298). X-rays showed degenerative joint disease, minor abnormality. (Tr. 277). She refused medication or a nutrition appointment for her hyperlipidemia. (Tr. 298).

On October 25, 2004, claimant continued to complain of left knee pain. (Tr. 293). She was taking only 10 mg Monopril daily rather than 20 mg. (Tr. 293). Her depression screening was positive, but she declined referral for psychological evaluation, stating that she could not afford to drive that far to come to the mental health center. (Tr. 295). She also had poor concentration. (Tr. 263).

The impression was arthritis, hypertension, hypothyroid, overweight (191 pounds), and elevated cholesterol. (Tr. 293). She was instructed to follow her diet and lose weight.

On April 25, 2005, claimant had gained seven pounds, and was not getting enough exercise. (Tr. 255). Her hypertension was well-controlled. She was instructed to follow her diet and exercise.

Bone mass density testing on April 28, 2005, showed osteopenia of the spine and normal BMD of the left hip. (Tr. 285). She was prescribed Fosamax.

On June 19, 2005, claimant's provisional diagnosis was hyperparathyroidism, hypothyroidism. (Tr. 242). A 24-hour urine calcium was ordered. A thyroid sonogram dated Ocotber 26, 2005, showed a multinodular goiter. (Tr. 148).

On May 15, 2006, claimant complained of depression, and increased pain and stiffness in the knees. (Tr. 160). Her blood pressure was 130/76, and weight was 190 pounds. (Tr. 160-61). On examination, she had no edema, and crepitance in both knees. The assessment was depression, arthritis of the knees, and glucose intolerance. (Tr. 162). Her hypertension was well-controlled.

On May 22, 2006, claimant complained of depression, anxiety, restlessness, sleep impairment, and panic attacks. (Tr. 218). Her mood appeared depressed with congruent affect. She found it difficult to trust people and converse with them. Her thinking was organized and goal-directed with no loose associations. (Tr. 219). She was alert and oriented in all spheres. She stated that her remote memory was poor; however, she demonstrated that her recent memory was good. Her attention and calculation skills were fair.

Claimant's concentration was fair, pace was good, and persistence was good. Her insight appeared to be fairly good, and her judgment was good. She

also stated that she had panic attacks from time to time when she was in a strange place.

The assessment was that claimant was depressed primarily because of her husband's illness and recent surgery, money problems, and poor self-concept. She agreed to a return appointment and to continue her anti-depressant medication. Her diagnosis was depressive disorder, NOS. The GAF score was 80.

On June 19, 2006, claimant reported that she was feeling much better. (Tr. 217). She stated that her medication and therapy were really helping her. Her mood appeared stable, and she stated that she was less depressed.

Claimant's depression was improved on July 20, 2006. (Tr. 216). She continued to have some panic attacks, but not as severe. The assessment was anxiety disorder and depression. She was continued on Citalopram and started on Trazadone for sleep.

On November 7, 2006, claimant was doing okay on her medications. (Tr. 313). She was sleeping better with the increase of Trazadone. She was mildly depressed. The assessment was anxiety disorder and depressive disorder. Her GAF score was 70. She was continued on Citalopram and Trazadone.

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on January 24, 2007, claimant was 54 years old. (Tr. 319). She testified that she was

5 feet 2 ½ inches tall, and weighed 180 pounds.  Her husband was disabled.

Claimant testified that she had never driven.  (Tr. 320).  She stated that she had completed the 12th grade in regular classes.  She reported that she had never worked outside of the home.

Claimant said that she had been in the military in 1970-1971.  (Tr. 323).  She stated that she had been discharged after about a year.

Claimant complained that she could not sit up for more than 30 minutes at a time because she became tired and had respiratory problems.  (Tr. 321).  She stated that she had been treated for respiratory problems with Dr. Angel.

Claimant testified that she had had thyroid surgery on August 26, 2005.  She statd that she was a lot better following surgery.

As to activities, claimant reported that she cleaned a little bit, made meals sometimes, did some laundry, and grocery shopped with her husband.  (Tr. 322).  She stated that she carried very light bags.  She testified that she swept, did the dishes, and some light vacuuming.

Additionally, claimant reported that she did a little bit of sewing and reading.  (Tr. 324).  She stated that she sewed about half an hour every day.  She testified that she saw her grown daughters once or twice a week, and watched her

grandchild sometimes. (Tr. 324-25). Additionally, she watched television and walked around the block. (Tr. 326).

Claimant said that she had been fatigued for about 10 years. (Tr. 322). She reported that she had had a light stroke, which had affected her breathing. (Tr. 323). She also had high blood pressure, for which she took medication. (Tr. 331). She stated that she went to the VA hospital for mental health two or three times a month, and primary care treatment two or three times per year. (Tr. 324).

Claimant testified that she had depression and panic attacks. (Tr. 325). She stated that the medication helped, but that she still had panic attacks. She reported that she did not like to be out where people were. (Tr. 329).

Additionally, claimant complained of left knee pain, for which she wore a brace. (Tr. 330). She also had acid indigestion, osteoarthritis, and vision problems. (Tr. 332, 333).

**(9) Claimant's Husband's Administrative Hearing Testimony**.

Claimant's husband, James Marcantel, testified that claimant had a problem with being around other people. (Tr. 335). He stated that he brought her to the psychologist at the VA hospital once a month. He said that she did somewhat better on medications. (Tr. 336).

Claimant's husband reported that claimant was able to do minor chores around the house. He stated that he helped her with the laundry. He said that she had good days and bad days with her arthritis. He also observed that claimant was very depressed. (Tr. 338).

**(10) Administrative Hearing Testimony of Lionel Bordelon, Vocational Expert ("VE")**. The ALJ posed a hypothetical in which he asked the VE to assume a claimant who could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand/walk and sit for about six hours in an eight-hour day; could not do complex or detailed work because of emotional problems; could do work requiring that she follow simple one- and two-step instructions, and could work in an environment where she had limited interaction with the general public and work with things rather than people. (Tr. 340). In response, Mr. Bordelon testified that claimant could do assembler types of occupations, of which there were 1,233,669 jobs nationally and 6,263 statewide, 25% of which would fit the hypothetical, and hand packager or packager, of which there were 363,980 jobs nationally and 2,922 jobs statewide, 25% of which would fit the hypothetical. (Tr. 340-41). When the ALJ asked whether there were any jobs available if claimant had problems which prevented her from doing simple one- and two-step instructions, the VE responded that there were not. The ALJ then asked whether

claimant could do any jobs if she had panic attacks a couple of times a month where she could not work, to which Mr. Bordelon responded that she could not.

**(14) The ALJ's Findings**. Claimant argues that: (1) the ALJ failed to apply SSR 83-20 by not employing a medical advisor to infer an onset date earlier than January 24, 2007; (2) the ALJ failed to fully and fairly develop the facts regarding claimant's intellectual impairment of borderline intellectual functioning; (3) the case should be remanded for new and material evidence, and (4) the residual functional capacity finding is not supported by substantial evidence because the ALJ failed to factor in claimant's severe hypertension. Because I find that the ALJ failed to fully evaluate claimant's onset date in light of her progressive mental impairment, I recommend that this case be **REMANDED** for further proceedings.

As to the first argument, SSR 83-20, which discusses the evidence to be considered when establishing the onset date of disability, provides, in pertinent part, as follows:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, *the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.* If there is

14

> information in the file indicating that additional medical evidence
> concerning onset is available, such evidence should be secured before
> inferences are made.

(emphasis added). SSR 83-20.

Claimant asserts that in cases involving "slowly progressive impairments," such as anxiety disorder, depression, and arthritis, SSR 83-20 requires that the inference of an onset date be based on an informed judgment of a medical advisor, citing *Spellman v. Shalala*, 1 F.3d 357, 362-363 (5th Cir. 1993). *Spellman* held that "in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability *is ambiguous* and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor." *Id*. at 362-63.

The record reflects that Dr. Greenway diagnosed claimant with borderline intellectual functioning on January 26, 2006. (Tr. 107). He opined that barring medical limitations, claimant should be able to maintain at least *part-time* employment. (emphasis added). He found that her cognitive skills were adequate to understand, remember, and carry out simple instructions, and to maintain attention to perform simple repetitive tasks for two-hour blocks of time. He stated that she should be able to tolerate at least mild stress associated with day-to-day

work activity and demands. He noted that she should be able to sustain a moderate effort and persist at a slow pace over the course of part of each workday. He further stated that her social skills were adequate for simple work-related matters.

Subsequently, on February 1, 2006, Dr. George assessed claimant for borderline intellectual functioning. (Tr. 115). She found that a medically determinable impairment was present, but did not precisely satisfy the diagnostic criteria under the listings for organic mental disorders. She determined that claimant could persist for a 40-hour week from a mental standpoint, "but could not maintain a consistently high level of concentration or pace." (Tr. 112).

Additionally, claimant argues that this case should be remanded based on new evidence, consisting of a post-hearing report from Jerry Whiteman, Ph.D., dated August 11, 2008, indicating that claimant had borderline intellectual functioning. [rec. doc. 12, Exhibit E]. When new evidence becomes available after the Secretary's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the

evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

Although Dr. Whiteman's report was dated after the relevant time period, the record reflects that claimant had been diagnosed with borderline intellectual functioning on January 26, 2006 by Dr. Greenway. (Tr. 107). As set forth in § 12.00 (D)(2), proper evaluation of claimant's impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time. "Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish your impairment severity." *Id*. While the ALJ reviewed Dr. Greenway's report, he failed to consider it in determining the onset date.

The undersigned finds that there is insufficient evidence to support the onset date in this case. In light of claimant's progressive impairment of borderline intellectual functioning, the ALJ should have had the assistance of a medical

advisor to establish this date. Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to obtain a consultative psychiatric and/or psychological evaluation on claimant's mental impairment of borderline intellectual functioning and its effect on the onset date. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to

furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed March 25, 2009, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE